# UNTIED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

EUGENE KELLY                                          CIVIL ACTION

VERSUS                                                NO. 15-00772-SDD-EWD

ARCH INSURANCE COMPANY, ET AL

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on June 9, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNTIED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

EUGENE KELLY                                    CIVIL ACTION

VERSUS                                          NO. 15-00772-SDD-EWD

ARCH INSURANCE COMPANY, ET AL

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Motion to Remand, filed by plaintiff Eugene Kelly.  (R. Doc. 5). Defendants Phenix Transportation West, Inc. ("Phenix") and Arch Insurance Company ("Arch") (collectively, "defendants"), oppose the Motion.  (R. Doc. 6).  For the following reasons, the undersigned recommends that plaintiff's Motion be **DENIED**.

### Factual and Procedural Background

On or about July 29, 2015, Kelly filed a Petition for Damages ("Petition"), against Arthur Payton, Casey Carver, and defendants in the 18th Judicial District Court, Parish of Pointe Coupee, Louisiana.  (R. Doc. 1-2).  Kelly alleges he suffered severe and disabling injuries as a result of a motor vehicle accident that occurred on July 25, 2015, on Highway 190 in Pointe Coupee Parish. Kelly alleges that he was the passenger of a vehicle driven by Payton, which was struck from behind by a tractor and trailer driven by Carver.  (R. Doc. 1-2 at 3).  Kelly further asserts that Carver was in the course and scope of his employment with Phenix at the time of the accident, and that Arch insured Carver and Phenix.  (*Id*. at 3-5).  In the Petition, Kelly asserts the accident was caused by the negligence of Payton, Carver, and Phenix.  (*Id*.)

On November 17, 2015, defendants removed the action on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a).  (R. Doc. 1).  In the Notice of Removal, defendants assert that

Kelly is a citizen of Louisiana, Carver is a citizen of Mississippi, Phenix is incorporated in Mississippi and has its principal place of business in Mississippi, and Arch is a Missouri corporation with its principal place of business in New York. (*Id*. at 2). The Notice of Removal asserts that Payton, a non-diverse defendant, was improperly joined as a defendant solely to avoid diversity jurisdiction and, therefore, his citizenship must be ignored for jurisdictional purposes. Although they do not expressly cite the Louisiana Workers' Compensation Act ("LWCA"), defendants argue, "The sole Louisiana defendant, Arthur Payton, cannot be sued because he is a co-employee of the plaintiff, and the plaintiff did not allege that Arthur Payton intentionally caused his injury." (*Id*.). Defendants also assert that they do not need consent from Carver or Payton to remove the case because Carver had not been served with the Petition and Payton was fraudulently joined as a defendant.

On December 14, 2015, Kelly filed the instant Motion to Remand, seeking to remand the action to state court on the basis that the Court lacks diversity jurisdiction because Payton is a proper non-diverse defendant. (R. Doc. 5). Kelly also requested attorney fees for having to respond to the meritless Notice of Removal. (*Id.*). Kelly argues that removal was procedurally defective and the action should be remanded because Carver was served prior to removal, but did not join in the removal or timely file a written consent to removal. Kelly claims that on July 31, 2015, his counsel mailed Carver a certified copy of the Citation and Petition via certified mail. (R. Doc. 5-1 at 5) (*citing* R. Doc. 1-2 at 59-60).[1] Although the certified mail return receipt was marked "unclaimed" and returned to sender on September 9, 2015, Kelly argues the long-arm statute does

---

[1] Although Kelly describes this document as the "affidavit of long-arm service" as to Carver, the document cited is actually the Affidavit of Long-Arm Service for service on Phenix. The Affidavit of Long-Arm Service as to Carver can be found at R. Doc. 1-2 at 90-92.

not require a signed return receipt.  Thus, Kelly asserts removal violated the "rule of unanimity" and remand is appropriate.

Kelly further asserts that defendants cannot meet their burden of proving Payton was fraudulently joined because the workers' compensation defense can only be asserted by Payton, who did not raise it as an affirmative defense in his Answer.  Kelly did not cite any law to support this assertion.  Kelly argues that Payton did not assert the defense because Kelly is an independent contractor of another company and there is no employment relationship between Payton and Kelly.  (R. Doc. 5-1 at 7).  Kelly points out that Payton testified during his deposition that Kelly was a "contractor" working for his own (Kelly's) company at the time of the accident and not for Payton's employer.  (R. Doc. 5-4 at 2-3).  Regarding the issue of liability, Kelly asserts that even though Payton was rear-ended, he will be able to prove Payton was liable for the accident under Louisiana's comparative fault statute.  Kelly argues that by asserting the defenses of third party fault, comparative duty, and the sudden emergency doctrine in their Answer, defendants have judicially admitted that Payton is negligent under third party fault or comparative fault.  (R. Doc. 5-1 at 7).

In opposition, defendants argue Carver's consent to removal is unnecessary because Kelly failed to properly serve Carver at a current address.  (R. Doc. 6-1 at 10-11).  Defendants assert that Kelly mailed the Petition to Carver at "1112 Heights Road, McComb, Mississippi 39648," the address listed in the police report that was issued about a year before this suit was filed.  (*See* R. Doc. 6-12).  Defendants argue, however, that Carver is an itinerant truck driver who had worked for Phenix less than 30 days when the accident occurred and was terminated shortly after the accident.  Defendants submitted an affidavit from Phenix stating that since his termination, Carver has not maintained a current address with Phenix and Phenix is unaware of his current residence.

(R. Doc. 6-13).  Defendants also submitted an affidavit from their counsel's paralegal, who conducted an online search for the owner of the property at the McComb address and discovered that Carver was not the record owner when service was attempted by Kelly in 2015.  (R. Doc. 6-14).  Thus, defendants argue no proof exists indicating that Carver still resided at the McComb address when the long-arm service was sent.  Defendants cite a recent decision from this Court, in which the Court concluded that a defendant was not properly served under the long-arm statute when service was directed to his former address where he no longer lived.  (R. Doc. 6-1 at 12) (citing *Grace v. Myers*, No. 15-300, 2015 WL 4939893 (M.D. La. Aug. 18, 2015)).  Based on the foregoing, defendants argue Carver was never properly served and his consent to removal was not necessary.

On the issue of fraudulent joinder, defendants do not contest Kelly's claim that he was an independent contractor at the time of the accident.  Instead, defendants assert that Kelly only performed manual labor for All Services Storage and, therefore, he is covered by the LWCA under its exception that provides coverage for independent contractors who spend a substantial portion of their work time performing manual labor.  (R. Doc. 6-1 at 2-8) (citing La. R.S. 23:1021(7)).  Relying heavily upon Payton's deposition testimony, defendants contend that Kelly engaged solely in manual labor while working for All Services Storage because the only work he performed involved delivering communications equipment.

According to Payton's deposition testimony, All Services Storage's business is to "transport communication equipment and maybe chemical to the plants."  (R. Doc. 6-1 at 4) (citing R. Doc. 6-2 at 4).  Payton explained that the equipment, often heavy batteries weighing 350 pounds, is loaded onto his truck and he and his crew simply deliver it to the job site.  (R. Doc. 6-2 at 5-6).  A hydraulic lift is used to take the new batteries off the truck and load the old batteries

onto the truck, and then the batteries are placed on a shelf.  (R. Doc. 6-1 at 4) (*citing* R. Doc. 6-2 at 6-7).  Defendants assert that Payton explicitly testified that he and Kelly simply performed manual labor in connection with their work for All Services Storage by testifying that, "We all doing the same work.  I mean, it's the type of same work.  Everybody have [sic] to do their part, but it's type of [sic] same work. . . .  We don't do any technical work.  Like I say, we do the labor. We do the labor.  We have technicians that do that."  (R. Doc. 6-1 at 5) (*quoting* R. Doc. 6-2 at 7). When asked if Kelly, "would have been doing really the exact same thing that you do," Payton responded, "Yes."  (R. Doc. 6-2 at 7).  Defendants also assert that Payton repeatedly denied that Kelly performed any type of technical or specialty work as a "consultant."  (R. Doc. 6-1 at 5) (*citing* R. Doc. 6-2 at 8).

Defendants claim that Payton's testimony is supported by documentation received from All Services Storage in response to defendants' subpoena and notice of records deposition.  (*See* R. Doc. 6-3).  According to defendants, All Services Storage produced invoices submitted by Kelly for the job in question, as well as work performed before and after the accident, which indicate that he merely provided "contract labor," including "delivery and palletization of batteries," or manual labor.  (R. Doc. 6-1 at 6) (*citing* R. Docs. 6-4 and 6-5).  All Services Storage also provided a reservation of rights letter that it received from its motor carrier insurer, Houston Specialty Insurance Company ("Houston"), which indicates that although Houston agreed to defend Payton as an employee of All Services Storage, it believed the instant lawsuit should be defended by All Services Storage's workers' compensation carrier.  (R. Doc. 6-1 at 6) (*citing* R. Doc. 6-6).  The letter further states that Houston understood that "workers' compensation premiums were paid by All Services Storage on behalf of Mr. Kelly, and he was eligible for workers' compensation coverage on the date of loss.  Mr. Kelly was covered by a workers' compensation policy at the

time of the accident but chose not to make an injury claim under the policy." (R. Doc. 6-6 at 1). In response to a subpoena and notice of deposition from defendants, Houston provided that after discussions with its insured, it understood that Payton and Kelly were both working in the course and scope of their employment with All Services Storage on the day of the accident making a delivery like they had done many times in the past. (R. Doc. 6-1 at 7) (*quoting* R. Doc. 6-7 at 2).[2]

Defendants argue that the foregoing evidence overwhelmingly proves that Kelly was merely performing manual labor for All Services Storage, and is therefore limited to a workers' compensation remedy against All Services Storage and his fellow employee, Payton.[3]

Defendants also claim that Kelly is a "borrowed employee" of All Services Storage and that a borrowing employer can be held liable for compensation benefits when the employee is under its control and direction in the performance of the work. *See* La. R.S. 23:1031(C). Defendants claim there can be little doubt that Kelly was directly under the control and direction of All Services Storage because Payton testified that Kelly did the same work as Payton and did not bring any expertise to the deliveries. (*See* R. Doc. 6-2 at 7-8). According to Payton's testimony, Payton served as Kelly's supervisor most of the time and gave him on-the-job training and All Services Storage also provided all of the equipment for the job, including the truck, hydraulic lifts, batteries, and protective gear. (*Id.* at 9). Defendants also assert that Kelly billed All Services Storage an hourly fee for his time, rather than a negotiated job rate, that Kelly's medical treatment after the accident was billed to All Services Storage, and that Kelly submitted

---

[2] Defendants further claim that after Payton filed an Answer, his counsel provided a submission for the court-ordered status report, alleging that "[b]oth Payton and Kelly were working for All Services Storage at the time of this accident. . . . Kelly fraudulently joined Payton as a defendant in the state court action." (R. Doc. 6-1 at 7) (*citing* R. Doc. 6-8 at 1). However, neither the Joint Status Report, filed on January 28, 2016, nor the substituted Joint Status Report, filed on January 29, 2016, contain this language. (*See* R. Docs. 8 and 9-2).

[3] Although defendants do not expressly assert that Kelly and Payton were in the course and scope of their employment with All Services Storage at the time of the accident, the evidence submitted, including Houston's response to defendants' notice of records deposition, makes clear that defendants are asserting that Kelly and Payton were in the course and scope of their employment at the time of the accident.

an application for employment when he started working with All Services Storage in 2005.  (*See* R. Docs. 6-5, 6-9, and 6-10).  Defendants question whether Kelly is actually employed by his consulting company because his income tax returns for 2012 through 2014 show that his only income for those years was his wages from All Services Storage and he lists All Services Storage as the name of his business on his Schedule C.  (R. Doc. 6-11).  Since Kelly is a borrowed employee of All Services Storage, he and Payton (also an employee of All Services Storage) are co-employees, therefore defendants argue Payton is immune from suit and was improperly joined to frustrate removal.

Defendants further argue that Payton was fraudulently joined because Kelly will not be able to prove Payton was liable for the underlying accident since the vehicle was rear-ended by Carver, who is legally presumed to be at fault.  (R. Doc. 6-1 at 10).  The police report also shows Carver admitted he was distracted because he was lighting a cigarette.  (R. Doc. 6-12 at 2).  Since Kelly will not be able to establish that Payton was liable for the accident, defendants argue Payton should not have been sued and was only joined to defeat diversity.

Defendants contend sanctions are not warranted because they had a thorough and objectively reasonable, legal basis for removing this action.  Defendants maintain that removal was based on an assessment of Kelly's weak liability claim against Payton and on the objective legal precedent that Kelly cannot state a tort claim against a coworker like Payton.  Thus, defendants argue no sanctions should be imposed.

On May 6, 2016, Kelly filed a Reply to Defendant's [sic] Memorandum in Opposition to Plaintiff's Motion to Remand, which essentially asserts the same arguments raised in his Motion to Remand.  (R. Doc. 16-2).  Kelly asserts that defendants cannot meet their heavy burden of proving improper joinder because it is indisputable that Kelly is an independent contractor and not

a coworker of Payton.  Kelly also asserts that defendants "are asking the Court to undergo an in-depth trial-like factual analysis" to determine if Kelly is limited to a cause of action under workers' compensation against Payton.  (*Id*. at 1).  Kelly asserts that the Fifth Circuit has "frequently cautioned the district courts against pre-trying a case to determine removal jurisdiction . . . ." and that such an analysis is not required to determine the issue of remand.  (*Id*. at 1-2) (citing *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990).[4]  Kelly further argues that the Court should reject defendants' argument that he will be unable to prove Payton was at fault for the accident since defendants pleaded third-party fault, negligence, and the doctrine of sudden emergency in their Answer.

## Applicable Law and Analysis

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a)-(a)(1).[5]  Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint.  *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed").  The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.  *Gasch v. Hartford Acc. & Indem. Co*., 491 F.3d 278, 281-82 (5th Cir. 2007).  The removing party has the burden of proving federal diversity jurisdiction.  *Garcia*

---

[4] The Court notes that the full text of the sentence cited by Kelly provides, "While we have frequently cautioned the district courts against pretrying [sic] a case to determine removal jurisdiction, we have also endorsed a summary judgment-like procedure for disposing of fraudulent joinder claims."  *Carriere*, 893 F.2d at 100.
[5] There is no dispute that the amount in controversy requirement is satisfied.

*v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003).  Remand is proper if at any time the court lacks subject matter jurisdiction.  *See* 28 U.S.C. § 1447(c).

### A. Consent to Removal

"When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action to federal court."  28 U.S.C. § 1446(b)(2)(A).  If consent of all served defendants is not timely obtained, the removal is procedurally defective.  *Doe v. Kerwood*, 969 F.2d 165, 167-69 (5th Cir. 1992); *see also Wade v. Fireman's Fund Ins. Co.,* 716 F. Supp. 226, 231 (M.D. La. 1989) ("The failure of all defendants to timely join in removal does not deprive the Court of jurisdiction over the subject matter and constitutes a procedural defect that can be waived by the plaintiff.").

Kelly asserts that he served Carver pursuant to the Louisiana long-arm statute on July 31, 2015.  (R. Doc. 5-1 at 5).  A certified copy of the Citation and Petition mailed to Casey Carver at 1112 Heights Road, McComb, MS 39648, was marked "unclaimed" and returned to sender on September 9, 2015.  Kelly argues that the act of mailing a certified copy of the Petition and Citation to Carver at this address, which was obtained from the police report issued after the underlying accident, satisfies the requirements for service of process under La. R.S. 13:3204.

The Louisiana long-arm statute permits service of nonresident defendants by sending a certified copy of the summons and complaint by certified mail to the defendant:

> A. In a suit under R.S. 13:3201, a certified copy of the citation . . . shall be sent . . . to the defendant by registered or certified mail, or actually delivered to the defendant by commercial courier, when the person to be served is located outside of this state or by an individual designated by the court in which the suit is filed, or by one authorized by the law of the place where the service is made to serve the process of any of its courts of general, limited or small claims jurisdiction.

> B. If service of process cannot be made on the nonresident by registered or certified mail or by actual delivery, the court shall order that service of process be made on an attorney at law appointed to represent the defendant pursuant to Code of Civil Procedure Article 5091.

La. R.S. 13:3204. "[A]ll that is necessary to constitute service upon a non-resident under the long-arm statute is that counsel for the plaintiff send a certified copy of the citation and of the petition in the suit to the defendant by registered or certified mail, or actually deliver it in person." *McFarland v. Dippel*, 99-0584, p.5 (La. App. 1 Cir. 3/31/00); 756 So.2d 618, 622. "There is no requirement under § 3204 for a signed return receipt." *HTS, Inc. v. Seahawk Oil & Gas, Inc.*, 04-892, p.3 (La. App. 3 Cir. 12/8/04); 889 So.2d 442, 444-45. "This prevents a defendant from attempting to defeat valid service by refusing to accept or sign for the letter." *Id*. While the Louisiana long-arm statute requires that proof of service be filed in the record for purposes of taking a default judgment, *see* La. R.S. 13:3205, the absence of proof of service will not relieve removing defendants from obtaining consent to removal from all properly served defendants. *Babin v. Isaman*, No. 09-0408, 2009 WL 3672901, at *4-5 (M.D. La. Nov. 4, 2009) (citing *Richoux v. CSR, Ltd.*, No. 08-931, 2008 WL 576242 (E.D. La. Feb. 29, 2008)).

Kelly relies on the state court decisions *McFarland* and *HTS* to support his argument that service was proper even though the certified Citation and Petition upon which service is based was returned to sender as unclaimed and undeliverable. In neither of those decisions, however, was there a dispute that the service of process was mailed to the correct address. See *McFarland*, 99-0584 at 2, 756 So.2d at 620 ("It is undisputed that a copy of the citation and of the petition was sent by [the defense] attorney to McFarland at his correct residential address."); *HTS, Inc.*, 04-892 at 3, 889 So.2d at 445 ("There is no indication that [plaintiff's counsel] sent the information to an incorrect address."). Here, like in *Grace v. Myers*, the parties disagree about whether the address

11

listed for Carver in the July 2014 police report was his current address when long-arm service was attempted in July 2015.  *See Grace,* No. 15-300, 2015 WL 4939893 (M.D. La. Aug. 18, 2015).

The decisions in *McFarland* and *HTS* are also distinguishable from this case because the party alleging improper service in those cases was the defendant upon whom long-arm service was attempted.  In contrast, the parties alleging improper service in this case, as in *Grace*, are the defendants seeking removal.  (R. Doc. 1 at 3); *See Grace*, 2015 WL 4939893 at *2.  Here and in *Grace*, the removing defendants assert that they were not required to obtain consent to removal from the defendant upon whom long-arm service was attempted because service was not sent to a current, correct address.  As in *Grace*, there is no indication in the record that Kelly's Petition was ever served on Carver.  *See Grace*, 2015 WL 4939893 at *5.  In *Grace*, however, it is evident that the improperly-served defendant received notice of the pending litigation because he provided an affidavit that the defendants submitted to the Court, confirming that long-arm service had not been sent to his current address.  *Grace*, 2015 WL 4939893 at *4.  In the instant case, there is no indication that Carver has even been made aware of the instant litigation.  Thus, the facts of the instant case, although similar to those in *Grace*, are even more egregious because there is no evidence to suggest that Carver has been made aware of the pending litigation.

Both the record and the evidence submitted by defendants in this case demonstrate that Kelly did not properly serve Carver pursuant to Louisiana's long-arm statute, La. R.S. 13:3204. The record shows that the Citation and Petition were sent to Carver via certified mail on July 31, 2015, were marked "unclaimed," and were returned to sender on September 9, 2015.  (R. Doc. 1-2 at 90-92; R. Doc. 5-1 at 5).  The record indicates that Kelly directed service to an address obtained at the time of the accident and made no additional efforts to determine Carver's address at the time service was attempted.  Defendants submitted affidavits to show that Carver was not the owner of

the McComb property at the time service was attempted and that Carver did not provide a current address when he was terminated by Phenix. (R. Docs. 6-13 and 6-14). There is no indication in the record that Carver, or a person authorized by Carver, lived at the address in McComb, Mississippi, and actively refused to accept service.

Defendants further claim that on October 28, 2015, they submitted discovery responses to Kelly and "listed Carver's address as 1040 Frank Carver Road, Magnolia, Mississippi 39648, the last address known to Defendants." (R. Doc. 13-1 at 3; R. Doc. 13-2 at 18). Defendants also produced Carver's personnel file from Phenix, which included a copy of Carver's commercial driver's license issued on April 18, 2012, which bears the McComb, Mississippi address. (R. Doc. 13-3). However, defendants also produced Carver's application for employment with Phenix dated July 15, 2014, a mere eight days before the underlying accident, which lists the Magnolia, Mississippi address as Carver's "Current Address." (R. Doc. 13-4 at 1). Thus, by October 28, 2015, prior to the Notice of Removal filed on November 17, 2015, Kelly was put on notice of the fact that the McComb address may not have been Carver's current address when service was attempted.

Based upon the foregoing, Carver was not properly served under the Louisiana long-arm statute at the time of removal and defendants were not required to obtain Carver's consent to remove this action.

### B. Improper Joinder and the Louisiana Workers' Compensation Act

The party seeking removal based on improper joinder of a non-diverse defendant bears a "heavy" burden of proving that the joinder was improper. *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003). To meet its burden, the removing party must show an "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-

diverse party in state court." *Id*. at 646-47. Here, defendants have not alleged actual fraud in the Petition. Instead, defendants claim Kelly will be unable to establish a cause of action against Payton because Payton and Kelly are coworkers and Kelly did not allege that Payton intentionally caused his injuries. (R. Doc. 1 at 2). The Court will therefore only consider the latter test for improper joinder. In the latter situation, "the test for [improper] joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573-74 (5th Cir. 2004).

Generally, a court should "conduct a Rule 12(b)(6)-type analysis . . . to determine whether the complaint states a claim under state law against the in-state defendant." *Id*. at 573. However, where a plaintiff has omitted or misstated "discrete facts that would determine the propriety of joinder," the district court may "pierce the pleadings and conduct a summary inquiry" to determine whether a non-diverse defendant has been improperly joined. *Id.* Although the court may consider "summary judgment-type evidence in the record," it must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the plaintiff. *Travis*, 326 F.3d at 649.

Under the Louisiana Workers' Compensation Act's (the "LWCA"), exclusivity provision, an employee's exclusive remedy against his employer and any coworkers for personal injuries sustained during the course and scope of employment is ordinarily limited to recovering workers' compensation benefits rather than tort damages. La. R.S. 23:1032(A); *see McClin v. H & H Lure Co*., 102 F. Supp. 2d 341, 343 (M.D. La. 2000). However, this tort immunity does not apply when the employee's injuries are the result of an intentional act. La. R.S. 23:1032(B). In those instances, the statute does nothing to shield the liability of an employer or co-employee. The plaintiff bears

the burden of demonstrating the work-related injury resulted from an intentional act.  *Mayer v. Valentine Sugars, Inc.*, 444 So.2d 618, 621 (La. 1984).

It is also well settled in Louisiana that the tort immunity defense under the LWCA is not a personal defense.  For example, many cases have held the tort immunity defense may be invoked by an insurer sued under the direct action statute.  *Dauzat v. State Farm Insurance Co.*, 473 So.2d 920, 922 (La. App. 3 Cir. 1985); *Lee v. Allstate Insurance Co.*, 467 So.2d 44, 47 (La. App. 4 Cir. 1985); *Green v. Turner*, 437 So.2d 956, 959 (La. App. 2 Cir. 1983).  "Because the tort immunity defense is a general defense, it may be invoke [sic] by the tortfeasor's liability insurer."  *Bolton v. Tulane Univ. of Louisiana*, No. 96-1246, p. 21 (La. App. 4 Cir. 1/29/97), 692 So.2d 1113, 1125 (citations omitted).

The LWCA generally does not provide coverage for independent contractors, "unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter."  La. R.S. 23:1021(7).  The statute defines an "independent contractor" as "any person who renders service, *other than manual labor*, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished."  (*Id.*) (emphasis added).  "The jurisprudence has uniformly defined 'manual labor' as work where the 'physical' element predominates over the 'mental' element."  *Riles v. Truitt Jones Const.*, 648 So.2d 1296, 1300 (La. 1995).  Further, "[i]t is the hands-on feature of labor combined with the strenuous quality of the work which determines whether a task is manual or not."  *Id.*  The term "substantial part," as used in La. R.S. 23:1021(7), has been liberally construed and is not a mathematical formulation.  *Id.*

**C. Kelly and Payton Are Co-Employees of All Services Storage Such That Tort Immunity Applies to Kelly's Claims Against Payton**

> **1. Kelly Performed Manual Labor And Is Therefore Covered Under the LWCA**

In the Petition, Kelly alleges that Payton, Carver, and Phenix are liable for the underlying accident and that Payton's negligent driving caused the accident and Kelly's resulting injuries. (R. Doc. 1-2 at 4). Thus, on its face, the Petition alleges a state law tort claim against an in-state defendant, Payton. In the Notice of Removal, defendants allege Payton was improperly joined as a defendant because Payton and Kelly are coworkers and Kelly did not allege that Payton intentionally caused his injuries. (R. Doc. 1 at 2). In the Motion to Remand, Kelly asserts that he is an independent contractor and has no employment relationship with Payton. (R. Doc. 5-1 at 7). Defendants, however, do not contest Kelly's claim that he is an independent contractor for All Services Storage. Instead, defendants allege in their Opposition that Kelly solely performed manual labor for All Services Storage and is therefore covered under the LWCA as an independent contractor who spent a substantial part of his time performing manual labor. (R. Doc. 6-1 at 2-3) (*citing* La. R.S. 23:1021(7)). In his Reply, Kelly did not address the type of work he performed for All Services Storage or the defendants' allegations that he only performed manual labor. (R. Doc. 16-1). Instead, Kelly reiterates the arguments raised in the Notice of Removal, asserting that he will be able to show Payton was at fault for the accident and defendants will be unable to meet their heavy burden of proving improper joinder because they cannot dispute that Kelly was an independent contractor and not Payton's coworker. (*Id*. at 1-2).

Based upon the foregoing, the Court finds that Kelly has omitted "discrete facts that would determine the propriety of joinder" by not asserting any facts regarding his employment relationship with Payton or the work that he performs for All Services Storage. *Smallwood*, 385

F.3d at 573-74.  As such, the Court is authorized to pierce the pleadings and conduct a summary inquiry to determine if Kelly has a possibility of recovery against Payton or if his tort claim is barred by the LWCA.  *Id.*  The Fifth Circuit has held, "[W]e resolve factual controversies in favor of the nonmoving party, but *only* when there is an actual controversy, that is, when *both* parties have submitted *evidence* of contradictory facts.  *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts*."  *Badon v. R J R Nabisco Inc.*, 224 F.3d 382, 3393-94 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis in original).  This Court has similarly held, "While this court accepts as true all of the specific factual allegations which the plaintiff makes in his affidavit, the court will not give deference to the plaintiff's factual or legal conclusions."  *Bourque v. Nan Ya Plastics Corp., America*, 906 F.Supp. 348, 354 (M.D. La. 1995).

Considering the evidence submitted by the defendants and the lack of evidence submitted by Kelly, there is no "factual controversy" regarding whether Kelly is covered under the LWCA as an independent contractor who performed mostly manual labor for All Services Storage or as a "borrowed employee" of All Services Storage.  Kelly has not alleged any facts or submitted any evidence to dispute the defendants' argument that he only performed manual labor for All Services Storage.  The Court finds that Kelly had an opportunity to brief the issue in his Motion to Remand, but chose not to address the type of work he performed for All Services Storage.  Kelly also filed a Reply brief after defendants specifically alleged that he was an independent contractor who performed mostly manual labor, but Kelly again chose not to address the issue.  The Court, therefore, has no choice but to rely on defendants' allegations regarding the type of work Kelly performed for All Services Storage.

According to Payton's deposition testimony, at the time of the accident Payton was driving a truck leased by his employer and his brother, Eugene, and Kelly were passengers in the vehicle with him.  (R. Doc. 6-2 at 3).  Payton testified that they were returning from a job in Shreveport, during which they replaced batteries for a communication system.  (R. Doc. 6-2 at 4).  Payton also testified that he was working at the time of the accident.  (*Id*. at 6).  Although Payton testified that Kelly was a "contractor," he also testified several times that he and Kelly performed the same type of work, which involved only manual labor and not technical work.  (*Id*. at 5, 7-8).

Although Kelly relies on Payton's deposition testimony to show that Kelly is an independent contractor, Kelly fails to address the fact that Payton repeatedly testified that Payton and Kelly perform the same type of work, which consists primarily of delivering heavy batteries and other communication equipment, and that the work involves only manual labor as opposed to technical work that requires special skills.  (R. Doc. 6-2 at 5-8).  Kelly also does not address the fact that defendants submitted a discovery response dated October 28, 2015, in which Kelly conceded that while working for All Services Storage, "Plaintiff performed duties in association with delivery and installation of computer equipment."  (R. Doc. 6-18 at 5).  The invoices submitted by Kelly to All Services Storage similarly show that Kelly billed All Services Storage for "contract labor," including "delivery and palletization of batteries."  (R. Docs. 6-4, 6-5).

Since Payton and Kelly are both covered by the LWCA and the Petition does not allege that Payton's intentional acts caused Kelly's injuries, we conclude that Kelly's exclusive remedy against Payton is workers' compensation.  Thus, defendants have shown that there is no reasonable basis for predicting that Kelly has a possibility of recovery against Payton based on Louisiana tort

law.  Accordingly, Payton has been improperly joined as a defendant because Kelly's claims

against Payton, as alleged, are subject to the LWCA's exclusivity provision.[6]

### 2.   Kelly Was a Borrowed Employee of All Services Storage

There is similarly no "factual controversy" regarding whether All Services Storage is a

borrowing employer of Kelly as alleged by defendants, because Kelly has not alleged any facts or

submitted any evidence on the issue.  Defendants argue that, "Pursuant to La. R.S. 23:1031(C), a

borrowing or special employer can be held liable for compensation benefits when the employee is

under the control and direction of the borrowing employer in the performance of the work."  (R.

Doc. 6-1 at 8) (quoting *Courtney v. Fletcher Trucking*, 12-0434, p.10 (La. App. 1 Cir. 12/21/12);

111 So.3d 411, 418).  If Kelly is a borrowed employee of All Services Storage, then he and Payton

are coworkers and Kelly's tort claim against Payton is barred under the LWCA.

The issue of whether a borrowed employee relationship exists is a matter of law for the

court to determine.  *Omega Const. v. Thornco, Inc*., 07-1806, pp. 4-5 (La. App. 1 Cir. 8/21/08),

994 So.2d 65, 68.  While there is no fixed test, the following factors should be considered in

determining the existence of a special or borrowed employee relationship: (1) right of control; (2)

selection of employees; (3) payment of wages; (4) power of dismissal; (5) relinquishment of

---

[6] Kelly asserted in his Motion to Remand and his Reply that defendants cannot assert the LWCA's immunity defense because the defense is only available to Payton. (R. Doc. 5-1 at 7; R. Doc. 16-2 at 2).  Kelly, however, failed to cite any legal authority to support this conclusion.  The Court finds Kelly's argument lacks merit, especially in light of the fact that the worker's compensation immunity defense is often asserted by defendants who are *not* the immune party under the LWCA.  See *Sanchez v. Shintech Louisiana, LLC*, No. 12-370, 2013 WL 1296684, at *1, 4-5 (M.D. La. Feb. 19, 2013) (Defendant removed the case based on diversity jurisdiction, asserting that a Louisiana defendant was improperly joined and that plaintiff failed to state a claim against that defendant because tort recovery was precluded under the LWCA.  This Court agreed.); *Boatner v. ABC Ins. Co.,* No. 11-409, 2012 WL 1143833, at *1,3 (M.D. La. April 3, 2012) (Defendant Shintech removed the case based on diversity jurisdiction, alleging defendant Excel, a Louisiana corporation, was improperly joined because plaintiff's claim against Excel was covered under the LWCA. This Court agreed that the claim was barred by the LWCA.); *Tyson v. Tammany Holding Corp*., No. 06-10764, 2007 WL 954785, at *1 (E.D. La. Mar. 27, 2007) (Defendant Komatsu removed the case to federal court based on diversity jurisdiction, alleging plaintiff improperly joined his employer as a non-diverse defendant.  Because the plaintiff did not seek to remand the matter, the court found the plaintiff acquiesced in Komatsu's assertion that plaintiff improperly joined his employer.)

control by general employer; (6) which employer's work was being performed at the time in question; (7) agreement, either implicit or explicit between the borrowing and lending employer; (8) furnishing of instructions and place for performance of the work in question; (9) length of employment; and (10) acquiescence by the employee in the new work situation." *Id*.

Defendants assert that Kelly is a borrowed employee of All Services Storage based on Payton's deposition testimony, which shows that Kelly was directly under the control and direction of All Services Storage. Payton testified that he and Kelly performed the same work, that he supervised Kelly most of the time, and that he gave Kelly on-the-job training. (R. Doc. 6-2 at 8-9). According to Payton, All Services Storage provided all the equipment for the job, including the truck, hydraulic lifts, and batteries, as well as personal protective gear. (*Id*. at 9). The invoices Kelly submitted to All Services Storage also show that Kelly billed All Services Storage at $14 an hour, rather than at a separate, negotiated job rate. (R. Doc. 6-5). The certified medical records from Comprehensive Occupational Resources, LLC, regarding Kelly's treatment after the accident also list All Services Storage as Kelly's employer. (R. Doc. 6-9).

Kelly has not alleged any facts or submitted any evidence to dispute the defendants' claim that he is a "borrowed employee" of All Services Storage under the LWCA. The Court finds that Kelly had an opportunity to brief the issue in his Motion to Remand and again in his Reply brief, but chose not to address the issue. Thus, the Court has no choice but to rely on defendants' allegations regarding whether Kelly was a "borrowed employee" of All Services Storage at the time of the accident. To the extent that defendants assert All Services Storage was a "borrowing employer" of Kelly at the time of the accident, as provided in La. R.S. 23:1031(C), the Court finds that Kelly and Payton were coworkers and Kelly's tort claim against Payton is barred under the LWCA. As such, Payton was improperly joined as a defendant in this action.

Since the Court has found that an objectively reasonable basis exists for removal in this case, there is no basis for granting Kelly's request to impose sanctions against the defendants for seeking removal.  Kelly's request for sanctions should, therefore, be denied.

### Conclusion

Based on the foregoing, the defendants have met their burden of proving that there is complete diversity, and that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).  Defendants were not required to obtain Casey Carver's consent to removal because at the time of removal, Carver had not been properly served under Louisiana's long-arm statute, La. R.S. 13:3204.  This Court also has subject matter jurisdiction over this action because Kelly has no possibility of recovery against Payton under Louisiana tort law.  Payton was, therefore, improperly joined as a defendant.  There is complete diversity between Kelly and the remaining defendants, Phenix and Arch, and the Court should retain subject matter jurisdiction over the action.

### RECOMMENDATION

It is the recommendation of the magistrate judge that Kelly's Motion to Remand (R. Doc. 5) should be **DENIED.**

Signed in Baton Rouge, Louisiana, on June 9, 2016.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**